IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JESSICA F. M. B.,[1]

    **Plaintiff,**

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    **Defendant.**

Civil Action 2:22-cv-3367
Judge Michael H. Watson
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). This matter is before the undersigned for a Report and Recommendation ("R&R") on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 13), Plaintiff's Reply (ECF No. 14) and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that the Court **REMAND** the Commissioner's non-disability determination pursuant to Sentence 4 of § 405(g).

### I.    BACKGROUND

Plaintiff protectively filed her DIB application in January 2020, and alleged that she became disabled on June 30, 2019. Plaintiff's applications were denied at the initial and

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

reconsideration levels before an ALJ held a hearing on July 8, 2021, and issued an unfavorable determination on August 2, 2021. That unfavorable determination became final on July 13, 2022, when the Appeals Council denied Plaintiff's request for review.

Plaintiff seeks judicial review of that final determination. She contends that remand is warranted because the ALJ erred when considering medical opinion evidence. (Pl.'s Statement of Errors 8–17, ECF No. 11.) Plaintiff is correct.

## II.   THE ALJ'S DECISION

The ALJ issued his decision on August 2, 2021, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 33–55.) The ALJ initially explained that Plaintiff met the insured status requirements through December 31, 2024. At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff not engaged in substantial gainful

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

activity since her alleged June 30, 2019 onset date. At step two, the ALJ found that Plaintiff had the following severe, medically determinable impairments: lumbar degenerative disc disease and disc herniation; posttraumatic stress disorder; and anxiety and depression. At step three, the ALJ further found that Plaintiff did not have a severe impairment or combination of impairments that met or medically equaled a listed impairment.

The ALJ then set forth Plaintiff's residual functional capacity[3] ("RFC") as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently balance, kneel, and crouch; occasionally climb ramps or stairs, stoop, and crawl; never climb ladders, ropes, or scaffolds; and no concentrated exposure to unprotected heights. the claimant is able to respond appropriately to supervisors and coworkers in a goal oriented setting with interaction with public and coworkers for short durations for specific purpose; perform simple repetitive tasks, in a work environment free of fast pace production requirements, involving only simple work related decisions with few if any workplace changes, explained in advance and introduced gradually.

(R. 40–41.)

At step four, the ALJ relied on testimony from a vocational expert to determine that Plaintiff was unable to perform her past relevant work as a nurse's aide. At step five, the ALJ again relied on VE testimony to determine that in light of her age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform including the representative occupations of cleaner housekeeper, sorter, and packer. The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from June 30, 2019, through the date of the ALJ's determination.

---

[3] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

### III.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

As previously explained, Plaintiff contends that the ALJ erred when assessing medical opinion evidence. Specifically, Plaintiff submits that the ALJ erred when considering medical opinions from Nurse Dorsky, a certified nurse practitioner, and Dr. Johnson, a consultative examiner. The undersigned finds that the ALJ erred when considering Nurse Dorsky's opinion, and thus, does not reach Plaintiff's contentions about Dr. Johnson's opinion.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[4] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5).

A medical opinion is defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in several enumerated areas. §§ 404.1513(a)(2); 416.913(a)(2) (emphasis added). An ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, when evaluating the persuasiveness of medical opinions, an ALJ must consider the following factors: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has

---

[4] Because Plaintiff's applications were filed in 2020, they are subject to regulations that govern applications filed after March 27, 2017.

familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and an ALJ must explain how he or she considered them. §§ 404.1520c(b)(2); 416.920c(b)(2). When considering supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support a medical opinion, the more persuasive the ALJ should find the medical opinion. §§ 404.1520c(c)(1); 416.920c(c)(1). When considering consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. §§ 404.1520c(c)(2); 416.920c(c)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. §§ 404.1520c(b)2); 416.920c(b)(2). But when an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." §§ 404.1520c(b)(3); 416.920c(b)(3).

The undesigned concludes that the ALJ erred when considering Nurse Dorsky's opinions.[5] On May 18, 2021, Nurse Dorsky completed a primary care medical statement. (R. 913–14.) In it, she wrote that Plaintiff had been diagnosed with lumbar disc herniation and

---

[5] The regulations provide that acceptable medical sources ("AMSs") include licensed Advanced Practice Registered Nurses ("LAPRNs"). 20 C.F.R. §§ 404.1502(a)(7); 416.902(a)(7). In Ohio, LAPRNs include Certified Nurse Practitioners, like Nurse Dorsky. Ohio Rev. Code § 4723.01(O)(4). Accordingly, Nurse Dorsky was an AMS and her statements about Plaintiff's work-related capabilities constituted medical opinions. 20 C.F.R. §§ 404.1513(a)(2); 416.913(a)(2)

6

narrowing disc space, and that Plaintiff's symptoms included burning, stabbing, and shooting back pain; disturbed gait; and right leg pain. (*Id.*)

Nurse Dorsky further opined that Plaintiff had all the following work-related limits. She was limited to sitting and standing/walking less than two hours in an eight-hour workday. (*Id.*) Plaintiff would require unscheduled 15-minute breaks on an at least hourly basis because of her chronic fatigue and pain, parasthesias, and numbness. (*Id.*) Plaintiff could frequently lift less than 10 pounds but could never lift 10 or more pounds. (*Id.*) Plaintiff could rarely twist, stoop, crouch/squat, and climb stairs or ladders. (*Id.*) Plaintiff would have good and bad days. (*Id.*) She was likely be "off task" 25 per cent or more of a typical workday because of symptoms that were severe enough to interfere with her concentration and attention. (*Id.*) Plaintiff was likely to be absent from work more than four days a month. (*Id.*) When asked to identify the clinical findings and objective signs that supported the severity of Plaintiff's symptoms and her opinions, Nurse Dorsky wrote: "MRI with large disc herniation at L4-5. Obvious discomfort with walking, sitting, standing." (*Id.*)

The ALJ found that Nurse Dorsky's opinions were not persuasive. The ALJ wrote as follows:

> The opinions of the claimant's treating nurse practitioner Sarah Dorsky, CNP are not persuasive. Her opinions as to the claimant's extreme limitations are not supported by physical examination findings. Notably her own treatment records lack any positive musculoskeletal or neurological findings that would support the claimant's inability to lift 10 pounds or stand, walk, or sit more than 2 hours in a workday (Exhibit 2F; 8F). They are further inconsistent with Dr. Offutt's findings on examination (Exhibit 4F).

(R. 45–46.)

As this discussion demonstrates, the ALJ considered the supportability factor and found it lacking. The ALJ explained that Nurse Dorsky's treatment notes and records did not contain

positive musculoskeletal or neurological findings that supported her opinion that Plaintiff was unable to lift 10 pounds or stand, walk, or sit more than two hours in a workday. (*Id*.) That explanation is belied, however, by the record which demonstrates that Nurse Dorsky routinely noted that she had gait abnormalities.

The record reflects that prior to the alleged June 30, 2019 date of onset, Plaintiff underwent a hemilaminectomy and discectomy for large disc extrusion at L4-5. (R. 699, 658.) Plaintiff did well after that procedure and initially reported improvements (R. 689, 658, 662) but she sought treatment for back pain again in January 2020 from Nurse Dorsky (R. 669). On January 13, 2020, Nurse Dorsky's examination notes indicated that Plaintiff had an antalgic gait and that she was hunched forward. (R. 677.) On February 2, 2020, Nurse Dorsky wrote that Plaintiff had a stiff gait and continued lower back pain with numbness and tingling radiating down her legs. (R. 673.) On February 24, 2020, Nurse Dorsky found that Plaintiff had a hunched forward gait, she was obviously uncomfortable, it was difficult for her to sit still, and she was positive for numbness and tingling that radiated down her right leg. (R. 667.) On December 7, 2020, Nurse Dorsky noted that Plaintiff's gait was hunched. (R. 789.) Accordingly, and contrary to the ALJ's conclusion, Nurse Dorsky's examination notes contained positive musculoskeletal findings that supported her opined walking limits.

In sum, the ALJ concluded that Nurse Dorsky's own treatment notes did not support the extreme limits that she opined. That conclusion was not supported by substantial evidence. Because the ALJ's supportability analysis did not comply with the relevant regulations, the undersigned concludes that the ALJ committed reversible error.

## V. RECOMMENDED DISPOSITION

Based on the foregoing, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability determination and **REMAND** this matter to the Commissioner and the ALJ.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this R&R, that party may, within fourteen (14) days of the date of this R&R, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the R&R or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the R&R. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE